[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 12, 2011
JOHN LEY
CLERK

No.  11-10094
Non-Argument Calendar

_____

D. C. Docket No.  4:09–cv-00570-VEH

ROEL VAUGHN,
JEAN VAUGHN,

Plaintiffs-Appellants,

versus

NACCO MATERIALS HANDLING GROUP, INC.,
successor by merger to HYSTER COMPANY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 12, 2011)

Before TJOFLAT, EDMONDSON and KRAVITCH, Circuit Judges.

PER CURIAM:

This is a products liability case.  Roel Vaughn was injured on the job while

operating a forklift manufactured by Hyster Company, Inc.  Vaughn thereafter

brought this action against Hyster.[1]  He alleged that Hyster was liable for his

injuries under the Alabama Extended Manuracturers' Liability Doctrine and for

breaching its purported implied warranties of merchantability and fitness for a

particular purpose.  The district court granted Hyster summary judgment after

excluding, on Hyster's motion, the opinions of Vaughn's two expert witnesses.

Memorandum Opinion dated December 3, 2010.

Vaughn appeals the summary judgment, arguing that the district court

abused its discretion in excluding the opinions of his experts and erred in granting

summary judgment because material issues of fact remained to be litigated with

respect to his breach of implied warranty claims.  We affirm.

The district court, in its order granting Hyster summary judgment,

described how Vaughn's injury occurred, according to Vaughn:

> Mr. Vaughn was employed by Federal Mogul Corporation as a
> materials handler and was performing his job duties at its
> Jacksonville, Alabama plant when the subject accident occurred on
> March 2, 2007. The  accident occurred while [Mr.] Vaughn was
> operating a Hyster "standup"  fork lift truck, which he had regularly
> operated since December of 2004.  According to [Mr.] Vaughn, he
> maneuvered the lift truck into an aisle, and stopped the vehicle to the
> left of some shelves containing automotive parts. [Mr.] Vaughn then

---

[1]  Vaughn's wife joined him as a plaintiff, asserting a derivative claim for loss of
consortium.

looked down and to his right toward two pallets on the floor, to locate parts he needed to lift with the truck and move onto another pallet. While holding in his right hand a label identifying the parts he needed to move, [Mr.] Vaughn leaned to his right to get a closer look at the pallets on the floor. [Mr.] Vaughn does not remember how far he leaned, testifying that "I Just remember leaning over." [Mr.] Vaughn testified that "[o]ne second I was looking at this label, and the next second I knew something bad had happened, and I was turned like sideways, and my arm was dangling." [Mr.] Vaughn's right arm apparently struck a portion of the shelving and was severely injured. [Mr.] Vaughn does not know how the accident occurred. [Mr.] Vaughn does not believe that the vehicle moved on its own.
Mr. Vaughn is "fairly sure" that an operating manual was located on the lift truck, but he does not recall reading it. In a section warning operators to "use common sense," the operating manual warned that operators should "[k]eep arms, legs, and head inside operator's compartment." Mr. Vaughn also acknowledged that there were various warning labels on the vehicle. [Mr.] Vaughn testified that "I saw them on there, and I'm sure I read part of it, but I don't know if I read letter for letter." Like the operating manual, the warning labels instructed operators to "[k]eep arms, legs and head inside operator's compartment." In February 2004, approximately three years prior to the accident, Mr. Vaughn completed a Federal Mogul "Lift Truck Operators Training Course Written Exam." In the "true or false" portion of the exam, [Mr.] Vaughn indicated that the following statement was false: "[I]t is OK to have your feet or hands outside the running lines of the equipment." [Mr.] Vaughn testified that he knew he could be injured if he did not keep his arms inside the operator's compartment.

The district court excluded the opinions of Vaughn's expert witnesses, Emmett Gamel and Thomas Talbot, under Federal Rule of Evidence 702, after it engaged in the gatekeeping function prescribed by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1993),

3

and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed.2d 238 (1999). The court found Gamel lacking in "sufficient knowledge, skill, experience, training, or education to render an opinion concerning the design or safety feature design of forklift trucks," Mem. Op. at 16, and that Vaughn failed to show that the "methodology used by Gamel in formulating his opinions [was] reliable." <u>Id.</u> at 20. The court found Talbot's opinions unreliable because, "like Gamel's, [they were] not based upon sufficient facts or data, and because Talbot did not use any methodology in reaching his opinions." <u>Id.</u> Moreover, as with Gamel's opinions, Vaughn "did not address the reliability of Talbot's testimony in [his] response" to Hyster's motion to exclude the opinions. <u>Id.</u> at 22. "They offered no explanation, no factual support, no case law, and no argument to support a conclusion that the methodology used by Talbot in formulating his opinions [was] reliable." <u>Id.</u>

The record fully supports the district court's <u>Daubert</u> findings and thus its decision to exclude the experts' opinions. Hence, the district court's ruling did not constitute an abuse of discretion.

The district court rejected Vaughn's claim that Hyster breached an implied warranty of fitness for a particular purpose on the ground that Vaughn "abandoned" the claim by not addressing the claim in his response to Hyster's

4

motion for summary judgment.  Id. at 27.  We find no error in the court's action.

The district court rejected Vaughn's claim that Hyster breached an implied

warranty of merchantability because, assuming that the experts' opinions were not

needed to make out a claim, Vaughan failed to satisfy the court's requirement that,

in opposing a motion for summary judgment, a party

> must . . . produce significant, probative evidence demonstrating a
> genuine issue [of material fact] for trial.  In [his] response, [Vaughn]
> merely noted that "Plaintiffs testimony regarding the unmerchantable
> quality of the subject forklift is . . . sufficient to defeat Defendant's
> summary judgment motion."  Although Plaintiffs' counsel filed Mr.
> Vaughan's deposition, Plaintiffs never cited to any portion of that
> testimony as evidence which would support this claim. . . . .  As
> required by Appendix II of the Uniform Initial Order, the Plaintiffs
> must support each statement of fact with specific reference to those
> portions of the evidentiary record that support it. . . .  And, as the
> Plaintiffs admitted . . . Vaughn does not know how the accident
> occurred.

Id. at 28 n.8.  We discern no error in the district court's rejection of the implied-

warranty-of-merchantability claim.  The court's judgment is accordingly

AFFIRMED.

5